**This order is SIGNED.**

**Dated: December 22, 2023**



**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>LUMEE LLC,<br><br>        Debtor. | Bankruptcy Case No. 19-24752<br><br>Chapter 11 |
| LUMEE LLC, a Utah limited liability company,<br><br>        Plaintiff,<br><br>v.<br><br>JUAN FERNANDEZ, an individual; and MONSTER PRODUCTS, LLC, a New Jersey limited liability company,<br><br><br>        Defendants. | Hon. William T. Thurman<br><br><br><br>Adversary Proceeding No. 21-2064 |

### MEMORANDUM DECISION

      Plaintiff LuMee, LLC ("LuMee") seeks a determination in this proceeding that Defendant

Juan Fernandez received avoidable transfers from his companies pursuant to 11 U.S.C. § 544[1] and

---

[1] All subsequent statutory references are to title 11 of the United States Code unless otherwise noted.

state law statutes incorporated thereby and seeks to recover them for the benefit of the bankruptcy estate pursuant to § 550. Plaintiff obtained a judgment against Products of Tomorrow, Inc. ("POT" and the "POT Judgment") in another proceeding, Adv. Pro. 20-02145 (the "POT Proceeding"), and is now claiming the Defendants in the current proceeding took money out of POT without paying reasonably equivalent value while it was insolvent. Plaintiff also seeks a determination that POT and another company, Monster, LLC, ("Monster") are Mr. Fernandez's alter egos and in all respects are liable for the POT Judgment. The analysis on these and other ancillary claims follows.

The Court conducted a trial on all of these matters on May 17, 18, and 19, 2023, and invited post-trial briefing from the parties, which each submitted. After thoroughly reviewing the evidence and assessing the credibility of witnesses, having read the parties' briefs and considered the oral arguments of counsel, and after conducting its own independent research of applicable law, the Court issues the following Memorandum Decision.[2]

## I.    JURISDICTION

The Court's jurisdiction over this adversary proceeding is properly invoked pursuant to 28 U.S.C. § 1334 and § 157(b)(1). This matter is a core proceeding within the definition of 28 U.S.C. § 157(b)(2)(H), and the Court may enter a final order. Venue is appropriate under 28 U.S.C. § 1409. Notice of the trial was proper in all respects.

---

[2] This Memorandum Decision constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a), made applicable in adversary proceedings through Federal Rule of Bankruptcy Procedure 7052. Any of the findings of fact herein are deemed, to the extent appropriate, to be conclusions of law, and any conclusions of law are similarly deemed, to the extent appropriate, to be findings of fact, and they shall be equally binding as both.

## II.     FINDINGS OF FACT

### A.     Background of this Proceeding.

There are four parties involved in this proceeding: LuMee, Mr. Juan Fernandez, POT, and Monster. POT and Monster are companies belonging to Mr. Fernandez.

In its Amended Complaint,[3] LuMee asserts ten claims for relief as follows: (1) recovery of property under 11 U.S.C. § 550; (2) avoidance of fraudulent transfers made with actual intent to hinder, delay, or defraud under § 544(b)(1), the UVTA, N.J. Rev. Stat. § 25:2-25(a), and Utah Code Ann. § 25-6-202(1)(a); (3) avoidance of constructively fraudulent transfers under § 544(b)(1), UVTA, N.J. Rev. Stat. § 25:2-25(b) and 2-27, and Utah Code Ann. § 25-6-202(1)(b) and 203(2); (4)_ equitable relief to amend the POT Judgment to add Juan Fernandez as co-liable on the POT Judgment under a veil- piercing/alter ego theory under New Jersey and Utah Law; (5) unjust enrichment; (6) avoidance of insider transfers for value under § 544(b)(1), the UVTA, N.J. Rev. Stat. § 25:2-27(2) and Utah Code Ann. § 25-6-203(2); (7) recovery remedies available to the Plaintiff under N.J. Rev. Stat. § 25:2-29 and Utah Code Ann. § 25-6-303, which relate to avoidance of the alleged transfers, attachment or injunctive relief; (8)  disallowance of claims; (9) seeking to amend the POT Judgment to include Monster as the alter ego of Mr. Fernandez and POT; and (10) successor liability for Monster. The Amended Complaint also seeks attorney's fees and costs.

The Court will go through each component of the various claims for relief asserted. There is some overlap of the findings regarding POT, Mr. Fernandez and Monster relating to LuMee as some of facts for the claims for relief are similar. The Court finds it important to outline much of the economic activity among the parties to give context to these findings and conclusions.

---

[3] Dkt. No. 28.

B.    **Stipulated Facts.**

The parties stipulated to certain uncontroverted facts, which the Court adopts. They are as follows:

1. Mr. Fernandez is an individual residing in New Jersey. He is or was, at all times relevant to this proceeding, the sole owner of POT. LuMee and POT were parties to a manufacturing agreement for the purchase and sale of cell phone covers. On December 30, 2015, POT became a minority owner of LuMee. LuMee filed a voluntary Chapter 11 petition on June 28, 2019.

2. On July 15, 2019, POT availed itself of the jurisdiction of this Court by filing an adversary proceeding in LuMee's bankruptcy case.[4] That adversary proceeding was subsequently voluntarily dismissed. POT also filed proof of claim no. 14.

3. On November 6, 2020, LuMee filed the POT Proceeding, which sought avoidance of fraudulent transfers and disallowance of POT's claim. POT chose not to answer or otherwise oppose LuMee's complaint, and the Court entered the POT Judgment by default on May 5, 2021, disallowing POT's claim and awarding judgment to LuMee in the amount of $2,656,024.20. Mr. Fernandez was aware of the POT Proceeding and deliberately chose not to defend it for strategic purposes.

4. On June 1, 2021, LuMee filed the present adversary proceeding against Mr. Fernandez seeking to avoid transfers from POT to Mr. Fernandez in an amount up to $2,656,024.20.

5. On December 3, 2021, during LuMee's combined deposition of Mr. Fernandez and the Rule 30(b)(6) deposition of POT, Mr. Fernandez testified that he is a co-owner of Monster, along with his wife and two children.

---

[4] Adv. Pro. No. 19-02075-WTT.

4

6. Mr. Fernandez uses his personal residence as the office for both POT and Monster.

7. POT is no longer operating.

8. POT also had an office building, which Monster owned. At the time of the deposition, Monster was in the business of developing consumer products similar to POT, and offered the same services POT offered prior to its shutdown.

9. Monster has done business with customers who used to be POT's customers, including Enviro Productions.

10. Mr. Fernandez would loan money to cover the cash needs of POT, and POT would pay Mr. Fernandez when money was available.

**C.  Additional Facts Established at Trial.**

POT's financial status is central to this proceeding, particularly whether it was insolvent at certain times. POT was the immediate transferee from LuMee of certain sums which are the subject of the POT Proceeding and POT Judgment. Mr. Fernandez and Monster are the mediate transferees from POT in this proceeding.

The main issues regarding the transfers are addressed under claims for relief 1, 2, 3, 6 and 7. The situs of the occurrence of material issues discussed herein and the location of the Plaintiff and the Defendants occurred either in Utah (the site of LuMee's business) or New Jersey (the location of the Defendants).[5]

---

[5] Throughout the pleadings, the parties refer to the Uniform Voidable Transfer Act (the "UVTA"), which has been adopted by both Utah and New Jersey. At times the Court may just refer to the UVTA and/or the individual state law statutes. As there could be an argument that the alleged transfers occurred in one or the other states, the Court, as do the parties, conclude that it really doesn't matter in analyzing the statutory scheme adopted in Utah and New Jersey as they are either identical or very similar.

The Court will also focus on the transfers out of POT and its compliance with corporate requirements and the use of it by Mr. Fernandez and Monster's role in various financial dealings. If POT was solvent during 2015-19, when alleged transfers occurred, the Plaintiff will lose on claims for relief 1, 2, 3, 6 and 7 as solvency is a key condition set forth in the statutes, including Utah Code Annotated ("UCA") § 25-6-203(1)(b) and N.J. Rev. Stat. §25:2-23(a) and 27(a). On the other hand, if POT was insolvent during

Some background of POT and Monster is also needed. Mr. Fernandez established POT in the late 1990s, served as its president, and was its sole owner. POT specialized in the research, design and development of new products, sourcing and/or manufacturing of new and existing products, production and shipping logistics for worldwide destination, import/export support and logistics, as well as multinational licensing deals for products. The company had its own bylaws.

Mr. Fernandez created Monster with himself, his wife and two children as the members. POT rented its building and place of business from Monster ("Monster Building"), which Mr. Fernandez had purchased through Monster in order to save on rent compared to POT's prior landlord. The funds for the purchase came from Mr. Fernandez and his wife. POT's rent payments to Monster were sporadic and made in varying amounts. No written lease between the parties was offered or received and, accordingly, the Court finds there was no lease. Monster sold the Monster Building for $310,000 on June 4, 2020,[6] and Mr. Fernandez received the net balance of $292,597.29.

Juan David Londono served as the vice president of POT from approximately September 2003 through his departure in approximately 2017. Kathleen Fernandez (Mr. Fernandez's wife) served as the secretary and treasurer of POT from September 14, 2003 through the closure of POT. No evidence was presented as to whether there was a successor.

---

the same period, or a portion thereof, Mr. Fernandez could lose on the transfer causes of action. A significant amount of evidence was presented on this, including testimony and volumes of exhibits, which were received, which makes the analysis of solvency one of the more complex and significant issues. Significantly, no expert testimony was offered on the issue of solvency or insolvency. The Court received four, 5-inch-thick 3-ring binders containing thousands of pages as exhibits. Not all of the exhibits related to insolvency, but a significant amount did. Finally, an analysis of Mr. Fernandez and Monster under the allegations of alter ego will be discussed.

[6] Ex. 29.

Mr. Fernandez is a trained engineer with experience in research, development, and design of products. He is a member of the American Society for Quality Control. He possesses a bachelor's degree in engineering from Stevens Institute of Technology. He received wages as an executive officer of POT, and POT withheld taxes on W-2s for him.

POT provided meals for employees, vehicle benefits, gas, health insurance and benefits, dental benefits, entertainment excursions, travel reimbursement and phones as benefits for being employees. However, there is no evidence as to who they were, except Mr. Londono and Mr. Fernandez's wife. Mr. Fernandez treated himself as an executive officer for tax reporting purposes. There were no bylaws, corporate resolutions or written policy providing for these benefits to be paid or if there were, none was presented to the Court.

Some expenses on company credit cards were not allowed by POT's accountant in the preparation of tax returns but others were, as described hereafter.

During 2015, 2016, 2017, and 2018, Mr. Fernandez received $370,009.02 in dividends from POT.[7] He received no dividends in 2019.  He also received wages during the same time period.

POT entered into an Exclusive Manufacturing Agreement with Glow Enterprises, LLC (the predecessor of LuMee) on February 5, 2013. The Exclusive Manufacturing Agreement between LuMee and POT was for a term of 20 years. POT made the decision to have LuMee as its sole account.

On December 23, 2015, POT and LuMee entered into an agreement to revise the Exclusive Manufacturing Agreement. On December 30, 2015, LuMee and POT executed the Second

---

[7] *See* Dkt. No. 60, Ex. B; Demonstrative C. The parties referred to the demonstratives in their arguments. These are summaries of some of the thousands of pages the Court received in Exs. 24 and 25. For the convenience of the Court and the parties, and since they both do not dispute the calculations on Ex. B or Demonstrative C, the Court, on occasion, will refer to the demonstratives and rely on them in this Decision.

Amended and Restated Limited Liability Company Agreement for LuMee, wherein POT became a 2.75% minority member of LuMee and gave up its exclusive manufacturing arrangement with LuMee.[8] POT continued to deliver products to LuMee, however, just not on an exclusive basis. LuMee was the primary, if not the only, client of POT during 2015-18 and some of 2019.

Mr. Fernandez argued and presented evidence of LuMee's profitability during certain of the years applicable here. It appears that this was for basically two reasons: (1) to show that POT was solvent on a cash flow and profitability basis, and (2) to persuade the Court that it should modify the POT Judgment. The Court will address insolvency below. No motion was made to modify the POT Judgment pursuant to Rule 59(e) or 60(b),[9] and the Court elects not to revisit the Defendant's request to modify the POT Judgment.

In analyzing the alleged fraudulent transfers, the Court will be using the statute of limitations of four years starting with the date of the petition (June 28, 2019) and going back four years to June 27, 2015, as allowed by state law (UCA § 25-6-305(1)-(2) and N.J. Rev. Stat. § 25:2-31) to determine if any transfers are avoidable.

## III.    CONCLUSIONS OF LAW

**A.    Insolvency at the Time of the Transfers: Was POT Insolvent?**

The UVTA focuses on insolvency as a prerequisite for liability for various transfers. As a result, specific transfers and the times they were made need to be analyzed.

Mr. Fernandez argues that under two theories of insolvency, i.e., the cash flow test and the unreasonably small capital test, POT was solvent during 2015-19. Evidence was insufficient to establish that POT was insolvent under these two theories.

---

[8] Ex. 10, at FERN00055.
[9] As made applicable in adversary proceedings by Fed. R. Bankr. P. 9023 and 9024.

Mr. Fernandez further argues that POT was solvent under the balance sheet test. He contends that POT's balance sheets contained in its several years of tax returns show it to be solvent and that no evidence was presented to show otherwise.

Under the UVTA, insolvency is defined under Utah and New Jersey law using the words, "fair valuation" of the debtor's assets, not the tax return stated values.[10] Mr. Fernandez argues that the Court should use the stated value on the tax returns and, if so, POT is solvent during 2015-19. But the stated value on tax returns is not the same as fair value under the UVTA. The Court will therefore use fair value.

Each year's tax returns need to be analyzed.  In viewing POT's 2015 tax return, total year-end assets are listed at $308,892.[11] Of that amount, $186,658 is listed as accounts receivable.[12] But the return also lists bad debts in the amount of $186,658.[13] It is unclear why those are the same. If they negate each other, POT's accounts receivable have no value. Liabilities are then calculated at $212,137.[14] The Court determines the accounts receivable of $186,658 should be included in the fair value of assets as explained above. As a result, POT had $308,892 in assets—cash, receivables, deposits, and prepaid expenses—and $212,137 in liabilities. Therefore, POT was solvent in 2015.

Further, the 2015 tax return should not be used to determine solvency due to the lack of evidence to show a starting date for transfers.   Demonstrative C refers to the whole year, but the four-year reach back starts in mid-June 2015. Without evidence showing transfers starting on June

---

[10] UCA § 25-6-103(1) and N.J.S.A. § 25:2-23.
[11] Ex. 16, at FERN000196, Line 15.
[12] *Id.* at Line 2a.
[13] *Id.* at Line 2b.
[14] *Id.* This figure is the sum of Lines 16 and 18.

28, 2015, the Court will not consider those transfers here, and POT is determined to be solvent in 2015.

POT's 2016 tax return contains a balance sheet showing assets of $2,267,054, and liabilities of $1,246,169, consisting of accounts payable, deposits from customers, and loans.[15] Accounts receivable are shown as $1,632,105 with an associated bad debt reference of $1,632,105.[16]

The Court asked the parties to provide post-trial briefing on solvency and received some. But without any forensic accounting or specific focus on whether the accounts receivable should be offset by the bad debt entries for this year, the Court determines that there is insufficient evidence to determine that the bad debt for 2016 should not be included in the fair value test. With that, the Court determines that the receivables should be counted as an asset.

There is also an accounting entry that values POT's interest in LuMee at $483,654.[17] LuMee was very profitable during 2016, and the Court will allow POT's stated value of its interest in LuMee in determining fair value. POT had just received its 2.75% interest in LuMee, and all appeared to point to a rosy picture for LuMee. Accordingly, the Court calculates the fair value of POT's assets at $2,267,054. POT's liabilities are calculated at $1,246,169. As a result, POT was solvent in 2016 using the balance sheet test.

POT's 2017 tax return shows assets of $1,395,262, which includes accounts receivable of $821,313, and liabilities at $454,822.[18]  Here again, the accounts receivable are identical to the bad debt. The Court will allow the inclusion of the accounts receivable as an asset at fair value. LuMee was still viable and valuable during 2017, and no deduction will be made for POT's stated

---

[15] *Id.* at FERN000216, Lines 15-19.
[16] *Id.* at Lines 2a-2b.
[17] *Id.* at FERN000225. This number appears on Line 14 of Schedule L. *Id.* at FERN000216.
[18] Ex. 30, at FERN002335.

value of its interest in LuMee at $413,505. Comparing POT's assets to its liabilities, it was solvent using the balance sheet test during 2017.

POT's 2018 tax return also contains a balance sheet showing assets of $1,337,654, which includes $962,708 in receivables, as well as an entry for bad debt in an identical amount.[19] That receivable was owed by LuMee. There was no evidence produced to show the interrelationship between those two identical numbers. But LuMee, as the source of all of POT's receivables, was in dire financial trouble. There was little or no chance at that time for POT to collect on that receivable from LuMee.   Accordingly, for 2018, the Court will not include the $962,708 in receivables in determining fair value. That conclusion is buttressed by the fact that POT sued LuMee on February 20, 2019 in state court for $914,614.98 on the account owed.[20] Further, the 2018 return shows POT's interest and value in LuMee was $345,995 by the end of that year.[21] Even though that figure had declined from $413,505 at the start of 2018, it was still extraordinarily high and speculative for several reasons. First, LuMee was barely hanging on as a viable economic entity in 2018. Second, LuMee hadn't paid down the payable owed to POT as mentioned above in the amount of $914,614.98. Third, POT had an operating loss of $243,644.[22] As a result, the Court finds POT's assets, including cash, deposits, and equipment, at fair value during 2018 to be $28,951.   Liabilities were $506,931. As a result, POT was insolvent during 2018.

The Court also finds POT to be insolvent during 2019 using the balance sheet test. According to POT's 2019 tax return, it had assets of $1,315,787.[23] Of that amount, $1,081,256 is listed as receivables, and bad debt is again listed in an identical amount.[24] POT's interest in LuMee

---

[19] Ex. 16, at FERN000365.
[20] *See* Ex. 32A.
[21] Ex. 16, at FERN000374.
[22] *Id.* at FERN000366.
[23] *Id.* at FERN000497.
[24] *Id.* at Lines 2a-2b.

had declined to $217,155.[25] Liabilities were $468,590, and POT had an operating loss of $118,701 for that year. Further, the return shows a loss of $49,987 relating to the investment in LuMee.[26] The receivables should not be considered in the fair value test and analysis of assets as LuMee was in bankruptcy that year and POT had a potential claim against LuMee of $914,614.98. Accounting for these deductions results in a fair value of $17,376 for POT's assets, with liabilities of $468,590. Further, when LuMee filed its bankruptcy case in 2019, the purchase orders from LuMee to POT stopped and the majority of POT's business ceased. LuMee and POT were intricately tied together because POT did most or all of its business with LuMee, LuMee owed a sizeable payable to POT arising from that business relationship, and POT owned an interest in LuMee. Accordingly, POT was insolvent during 2019.

In summary, after this review of POT's tax returns found in Exhibits 16 and 31A, the Court is persuaded that POT was solvent in 2015, 2016 and 2017, and insolvent in 2018 and 2019 as set forth above using the balance sheet test. Mr. Fernandez is correct, as argued in his post-trial brief, that "[t]hese tax returns are the only evidence before the court on the issue of insolvency."[27] But, in digging into the 2018 and 2019 returns, the Court finds they actually show insolvency under the UVTA fair value test during these years.

The Court believes that it can make this conclusion on insolvency without expert testimony. In the Court's opinion, LuMee was not a viable company in 2018 or 2019, and listing it at a stated value of anything above zero was pure speculation. Similarly, listing POT's receivable from LuMee for anything above zero stands in conflict with the fact that POT was suing LuMee for $914,614.98.

---

[25] *Id.* at Line 14.
[26] *Id.* at FERN000506.
[27] Dkt. No. 60, at 18.

The Court is not limited to only using expert testimony in analyzing what the tax returns show.

> "Rule 702, however, does not make the testimony of the expert, even if uncontradicted by another expert, conclusive as to the issue testified to. The Court is free to make its own determination of the issues, regardless of the expert testimony. . . . Rule 702 does not mean that the trier of fact must rely upon expert testimony which is unsatisfactory or that the trier of fact is precluded from making an independent determination of the facts, regardless of how complicated or 'specialized' the subject matter may be.[28]

In short, the Court is free to make its own conclusion even if there is an expert witness, so it follows that it can do so if there is no expert witness. Moreover, POT's tax returns do not require an expert witness to assess and analyze. The information therein is presented straightforwardly, and the Court's experience with tax returns in other cases leads it to conclude that expert testimony is not necessary to reach a determination regarding POT's solvency.

## B.   The Transfers from POT to Mr. Fernandez.

The details for each payment made by LuMee to POT avoided by the POT Judgment are found in Demonstrative E, totaling $2,656,024.20. The avoided transfers in that proceeding occurred from May 5, 2017 to November 15, 2018.

Attached to Mr. Fernandez's post-trial brief is Exhibit B, which is an analysis of the transfers to him between the dates of May 5, 2017 and June 27, 2019.[29] Plaintiff's demonstrative refers to this same time period, roughly the two-year period prior to the date of LuMee's petition.[30] Both documents analyze the total transfers by LuMee during this time period: $773,219.13.

---

[28] *In re Opelika Mfg. Corp.,* 66 B.R. 444, 450 (Bankr. N.D. Ill. 1986) (citations and internal quotation marks omitted).

[29] Dkt. No. 60-3. There was no objection to the Court considering this, and it is the same as Plaintiff's Exhibit B included in its demonstratives. Both parties referred to the transfers contained in it, and the Court finds it credible.

[30] The evidence going back to 2015 is contained in Demonstrative C. As stated elsewhere in this Memorandum Decision, POT was solvent during 2015, 2016 and 2017 and, as a result, it is unnecessary to calculate transfers for those years.

The Court has gone through Exhibit B and Demonstrative C and has made a calculation as to the total of distributions:

1. Wages to Mr. Fernandez during 2018-19: $907,434.80.[31]

2. Wages to Kathy Fernandez: $911,887.90.[32]

3. Transfers to Monster: $234,152.05.[33]

4. Gas expenses for 2017-19: $4,484.61.

5. Restaurant expenses for 2017-19: $15,179.87.

6. Healthcare expenses for 2017-19: $7,285.89.

7. Life insurance expenses for 2017-19: $3,247.82.

8. Grocery expenses for 2017-19: $4,649.39.

9. Entertainment expenses for 2017-19: $5,017.66.

10. Travel expenses for 2017-19: $3,209.36.

11. Mechanic/car/supplies/security expenses for 2017-19: $6,382.84.

12. Unknown/no category expenses for 2017-19: $1,332.06.

13.   Other distributions to Mr. Fernandez: These were most likely treated as dividends as the Plaintiff's evidence and summary shows $370,009.03 from 2015-19.

The Court calculates other distributions or dividends to Mr. Fernandez in 2018 and 2019 as follows: $30,478.27 for 2018 and $0 for 2019, as none is listed. If other tests are met, these particular transfers should be included as avoidable transfers under either Utah or New Jersey

---

[31] Demonstrative C.
[32] The total for June 2017 was $4,453.13.
[33] Demonstrative C, 2017-2018.

avoidance law as they were made while POT was insolvent. As the Plaintiff points out in its trial brief, "dividends are, as a matter of law, made without reasonable equivalent value."[34] The Court is persuaded by that reasoning here. Accordingly, the dividend transfers from POT to Mr. Fernandez during 2018-19 were made without reasonably equivalent value.

In addition, Demonstrative C shows personal spending by Mr. Fernandez from POT of $330,159 during 2015-19.[35] As the Court has found POT to be solvent during 2015, 2016 and 2017, it is not necessary to analyze the transfers during those years for personal spending. The Court will only consider transfers during 2018 and 2019 for the American Express and Bank of America credit cards. The Court finds that Mr. Fernandez used those cards for personal spending during 2018 in the amount of $52,573.31. For 2019, the Court finds that total to be $19,584.33. Combining those amounts together, the Court finds the personal spending of Mr. Fernandez to be $72,157.64 during 2018-19.

The other entries on Demonstratives B and C show additional expenses paid by POT. The Court determines that wages paid to Mr. Fernandez and his wife should not be included in recoverable amounts for any possible avoidable transfer because the Court finds value received for those wages. The evidence is that the Fernandezes were working for POT, and Mr. Fernandez had the knowledge, experience, and expertise to justify getting paid. Further, the amounts for healthcare in the amount of $7,285.89 and life insurance in the amount of $3,247.82[36] should not be counted as avoidable transfers, as Mr. and Mrs. Fernandez were an officer and employee, respectively. As Mr. Fernandez points out, "[t]hese services [performed for POT] include his expertise and work as an engineer, servicing the needs of POT's client LuMee, overseeing the

---

[34] Dkt. No. 59, at 17 (citing *Freeland v. Enodis Corp.*, 540 F.3d 721, 735 (7th Cir. 2008)).
[35] The full accounting of this spending is found in Exs. 23, 24, and 25.
[36] *See* Dkt. No. 60, Exs. A and B.

books and records of the company, working on client development, overseeing the preparation of year-end tax returns and handling any employee concerns."[37] The Court agrees. These distributions (except the dividends and personal spending) are likewise not includable in the calculation of possible avoidable transfer amounts, including payments to Monster.

Accordingly, the amount of potential avoidable transfers as dividends and personal spending from POT to Mr. Fernandez during 2018 and 2019 is $102,635.91. For the purpose of analyzing all of the alleged avoidable transfers, the Court will address the claims for relief out of order and will address causes of action, 1, 2, 3, 6, and 7 first.

**C.      LuMee's First Claim for Relief: Recovery Under Section 550.**

"The Bankruptcy Code separates the concepts of avoidance and recovery."[38] Avoidance powers are governed by sections 544, 545, 546, 547, 548, and 549 of the Code, while recovery of avoided transactions is governed by section 550.[39] There are no other sections in the Code that address recovery of avoided transfers.[40]

As to the first claim for relief, LuMee seeks to recover property from Mr. Fernandez under § 550, alleging that he received property as a subsequent or mediate transferee. Since the transfers from LuMee to POT were *avoided* in the POT Proceeding, *recovery* under § 550 can only be made against the initial transferee or any immediate or mediate transferee of such initial transferee.[41] The initial transferee was POT. Thus, under this first cause of action, Mr. Fernandez is the mediate transferee.

---

[37] *Id.* at 20.
[38] *Official Committee of Unsecured Creditors v. JP Morgan Chase Bank, N.A. (In re M. Fabrikant & Sons, Inc.)*, 394 B.R. 721, 741 (Bankr. S.D.N.Y. 2008) (citations omitted).
[39] *See id.* at 741 ("Section 550 deals with the situations involving affirmative recovery.").
[40] State law allows for recovery of avoided transfers, *e.g.*, N.J. § 25:2-30(b)(1) and UCA § 25-6-303, which the Court will address hereafter.
[41] § 550(a)(1) and (2).

Under § 550, a plaintiff may not recover from an immediate or mediate transferee if that transferee "[1] takes for value, including satisfaction or securing of a present or antecedent debt, [2] in good faith, and [3] without knowledge of the voidability of the transfer avoided."[42] The transferee bears the burden to show all three elements of this affirmative defense.[43] Accordingly, the Court needs to analyze the value given and Mr. Fernandez's good faith and knowledge.

    1.   <u>Receiving Transfers for Value.</u>

"Value," for purposes of § 550(b) of the Bankruptcy Code "is consideration sufficient to support a contract . . . there is no requirement for the value of the property received from the earlier transferee to be reasonably equivalent to the value of the property given by the subsequent transferee."[44] The requirement is simply that some value be given.[45]

In this proceeding, Mr. Fernandez gave value to POT. He is a trained engineer, worked for POT, managed employees, discussed taxes with the company's accountant, met with clients, developed products, and met with customers. Accordingly, his wages meet the test of providing value to POT. This applies to Mrs. Fernandez's wages as well. The Court also finds that the Fernandezes gave value for the health care and life insurance benefits provided by POT.

The same analysis applies to the transfers to Monster, as it was the owner of the building in which POT did its business, and although there was no written lease, Monster allowed POT to use the building for some consideration, which could be considered rent and was providing value. Although the Plaintiff argues that all other transfers to Monster during 2018-19 should be avoided and recovered, the Court disagrees.

---

[42] § 550(b)(1).
[43] *See Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1196 (10th Cir. 2002).
[44] *Redmond v. Brooke Holdings, Inc. (In re Brooke Corp.)*, 515 B.R. 632, 640 (Bankr. D. Kan. 2014) (citations omitted).
[45] *See FDIC v. Wright* (*In re Still*), 963 F.2d 75, 78 (5th Cir. 1992).

The evidence from the Plaintiff is that funds in the amount of $102,635.91, as found above, were received by Mr. Fernandez without value.

2.    Taking in Good Faith.

The Bankruptcy Code does not define "good faith." But courts have interpreted it to require an objective standard.[46] "The question is solely whether the grantee knew or should have known that he was not trading normally but that on the contrary, the purpose of the trade, so far as the [transferor] was concerned, was the defrauding of his creditors."[47] In other words, "a defendant cannot have actual or constructive notice (including inquiry notice) about the avoidability of the unauthorized transfer."[48] When examining the issue of "good faith," the focus is on the transferee, not the intent of the transferor.

From the 2018 and 2019 tax returns alone, Mr. Fernandez knew POT was insolvent when he took the transfers during those years. The bad debt owing from LuMee, plus the losses taken regarding income from LuMee, all point to POT being insolvent and, as a result, Mr. Fernandez knew it and did not take the transfers in good faith.

3.    Knowledge of Voidability.

Finally, "to be protected under § 550(b)(1), the transferee must take the property without knowledge of the voidability of the transfer avoided."[49] Similar to the other prongs of the good faith defense, the term "without knowledge of the voidability of the transfer" is not defined. "To establish this lack of knowledge, a defendant must show an 'absence of facts that would cause a

---

[46] *See Jobin v. McKay (In re M & L Bus. Mach. Co.)*, 84 F.3d 1330, 1338 (10th Cir. 1996) (construing section 548(c)).

[47] *Stevenson v. Genna (In re Jackson)*, 426 B.R. 701, 707 (Bankr. E.D. Mich. 2010) (quoting 5 Collier on Bankruptcy, ¶ 550.03[2] at 550–23 (Alan N. Resnick, et. al., eds. 15th ed.)).

[48] *Official Comm. of Unsecured Creditors v. Western United Life Assurance Co. (In re Tri-Valley Distrib., Inc.)*, 452 B.R. 837, 849 (Bankr. D. Utah 2011).

[49] *Grochocinski v. Knippen (In re Knippen)*, 355 B.R. 710, 729 (Bankr. N.D. Ill. 2006) (citation omitted).

reasonable person to investigate whether the transfer would be avoidable.'"[50] Facts to consider are whether the recipient knew of financial difficulties, knew of a potential buyout of the debtor, or knew of whether the debtor was highly leveraged.[51]

Mr. Fernandez testified about POT's financial status at the time of the transfers (May 5, 2017 through June 27, 2019) as follows: (1) POT had paid all of its trade creditors related to the production and sale of cell phone covers to LuMee and was always solvent; and (2) POT didn't have any debt other than money that it owed to Mr. Fernandez. The Plaintiff points to a number of examples of other debts not being paid, but the Court finds the evidence insufficient to establish those.

Even so, Mr. Fernandez knew or had good reason to believe that POT was insolvent on a balance sheet test by simply looking at the true value of POT's assets during 2018 and 2019.[52] The Court finds that Mr. Fernandez knew or should have known about the precarious financial condition of LuMee and POT at least beginning in 2018 through 2019.

Without good faith, because Mr. Fernandez took the transfers with knowledge of their avoidability, and due to the lack of value as mentioned above, Mr. Fernandez cannot prevail on his good faith defense under § 550. Accordingly, the Plaintiff has carried its burden by a preponderance of evidence on this claim for relief and may recover under § 550 against Mr. Fernandez for the amount of dividends and personal spending: $102,635.91.

---

[50] *Tri-Valley Distributing*, 452 B.R. at 851 (quoting *Hopkins v. SunTrust Mortg., Inc.*, 441 B.R. 656, 664 (Bankr. D. Idaho 2010)).
[51] *See In re Richmond Produce Co*., 195 B.R. 455, 464 (N.D. Cal. 1996).
[52] The UVTA allows for applying a profitability, unreasonable capital, or balance sheet test.  As mentioned above, the Court is using the balance sheet test applying the fair value of assets.

**D.      LuMee's Second Claim for Relief: Actual Intent to Defraud Creditors.**

Section 544(b)(1) allows a debtor to utilize state law remedies for avoidance of transfers. LuMee's second cause of action seeks to avoid transfers under the UVTA arising from efforts to hinder, delay, or defraud creditors under UCA §25-6-202(1)(a) and N.J. Rev. Stat. § 25:2-25(a). The Plaintiff is seeking to avoid and recover the full amount of the POT Judgment as well as individual transfers out of POT to Mr. Fernandez.

UCA § 25-6-202(1) provides that:

A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(a) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(b) without receiving a reasonably equivalent value in exchange for the transfer or obligation.

LuMee bears the burden to prove the elements of this claim "by a preponderance of the evidence."[53]

The Plaintiff asserts that "POT transferred to [Mr.] Fernandez monies comprising the original transfers from LuMee to POT in an amount not greater than $2,656,024.20 with the actual intent to hinder, delay, or defraud POT's creditors, including LuMee."[54] Thus, the question for the second claim for relief is whether it is more likely that the transfers to Mr. Fernandez from POT were simply payment for his services to POT or whether the payments were made to hinder, delay, or defraud POT's creditors.

---

[53] UCA § 25-6-202(3).
[54] Dkt. No. 28, ¶ 62.

Although Mr. Fernandez did not admit to receiving transfers from POT to hinder, delay, or defraud POT's creditors, evidence of this kind of conduct comes from a review of the totality of circumstances surrounding the time of the transfers. A plaintiff shows fraud through the UVTA's badges of fraud set forth in UCA § 25-6-202(2) and N.J. Rev. Stat. § 25:2-26.[55] The existence of a single badge of fraud does not mandate a finding of fraud.

But in this case, there were several badges of fraud, which persuades the Court that Mr. Fernandez took the transfers during 2018 and 2019 with actual intent to hinder, delay, or defraud creditors, including LuMee. It is noted that LuMee was not a creditor of POT during 2018-19. However, UCA § 25-6-202(1) provides that a "transfer made . . . by a debtor is voidable as to a creditor, whether the creditor's claim arose <u>before or after the transfer was made</u> . . . if the debtor made the transfer . . . with actual intent to hinder, delay, or defraud any creditor of the debtor." Once POT became a judgment creditor, even after 2018-19, transfers out of POT are fair game for the Plaintiff to challenge under the UVTA.

To determine actual intent under the UVTA, courts may consider a non-exclusive list of factors, including whether:

(a)    the transfer or obligation was to an insider;

(b)    the debtor retained possession or control of the property transferred after the transfer;

(c)    the transfer or obligation was disclosed or concealed;

(d)    before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(e)    the transfer was of substantially all the debtor's assets;

(f)    the debtor absconded;

(g)    the debtor removed or concealed assets;

---

[55] *See also Taylor v. Rupp (In re Taylor)*, 133 F.3d 1336, 1339 (10th Cir. 1998) ("When one or more of these badges [under the UVTA] are present[,] fraudulent intent can be inferred.").

(h)         the value of the consideration received by the debtor was
            reasonably equivalent to the value of the asset transferred
            or the amount of the obligation incurred;

(i)         the debtor was insolvent or became insolvent shortly after the
            transfer was made or the obligation was incurred;

(j)         the transfer occurred shortly before or shortly after a
            substantial debt was incurred; and

(k)         the debtor transferred the essential assets of the business to
            a lienor that transferred the assets to an insider of the
            debtor.[56]

A review of these badges of fraud shows that Mr. Fernandez was an insider and received
the transfers; the transfers consisted of much or substantially all the debtor's assets; he did not give
reasonably equivalent value for $102,635.91 in dividends and personal spending; and POT was
insolvent at the times of the transfers.

To be sure, some badges go against a finding of actual intent to hinder, delay, or defraud.
But on balance, the Court determines that the four badges mentioned in the prior paragraph show
that the individual transfers during 2018-19 were made with actual intent to hinder, delay, or
defraud creditors.

The question then arises whether Mr. Fernandez should be liable for the full amount of the
POT Judgment, as requested by the Plaintiff.[57] However, the Court does not find that Mr.
Fernandez should be liable under the transfer theories for the POT Judgment. The evidence and
argument were insufficient to make that finding.

**E.      LuMee's Third Claim for Relief: Constructive Fraud.**

LuMee's third claim for relief is an attempt to avoid the transfers under the UVTA, alleging
that POT was insolvent at the time it made the transfers and made the transfers without receiving

---

[56] UCA § 25-6-202(2).
[57] *See* Dkt. No. 28, ¶¶ 27, 53-64. Paragraph 27 of the Amended Complaint defines "Transfers" as the
$2,656,024.20 avoided in the POT Adversary Proceeding.

a reasonably equivalent value in exchange.[58] As with the actual fraud claim, LuMee has the burden

of proof by a preponderance of the evidence, which means that LuMee must show that it is more

likely true than not that POT did not receive a reasonably equivalent value from Mr. Fernandez in

exchange for the transfers and that POT was insolvent or rendered insolvent by the transfers. The

transfers made during 2018-19 in the amount of $102,635.91 meet the criteria, by a preponderance

of the evidence, of being made for less than equivalent value while POT was insolvent.

**F.      LuMee's Sixth Claim for Relief: Avoiding Insider Transfers.**

LuMee's sixth claim for relief against Mr. Fernandez seeks to avoid insider transfers from

POT to Mr. Fernandez under N.J. Rev. Stat. § 25:2-27(2) and UCA § 25-6-203(2) relating to

transfers on account of an antecedent debt.  The applicable statute states that "[a] transfer made

by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the

transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and

the insider had reasonable cause to believe that the debtor was insolvent."[59]

The evidence is inconclusive as to any amounts that might have been owed as an antecedent

debt, and the Court finds the Plaintiff has not carried its burden on this cause of action by a

preponderance of the evidence.

**G.      LuMee's Seventh Claim for Relief.**

Under this claim, the Plaintiff seeks remedies under N.J. Rev. Stat. § 25:2-29 and UCA

§ 25-6-303. This claim seeks injunctive relief, attachment against properties transferred,

---

[58] *See* UCA § 25-6-202(1)(b) and the similar N.J. Rev. Stat.; *see also* Dkt. No. 28, ¶ 71 ("POT received
less than reasonably equivalent value in exchange for the Transfers, as POT received nothing in exchange
for Transfers between POT and [Mr.] Fernandez.").
[59] N.J. Rev. Stat. § 25:2-27(2); *see also* Utah Code Ann. § 25-6-203(2).

appointment of a receiver, and other relief. The Court determines that the Plaintiff has not carried

its burden to show that such should be awarded in this proceeding.

**H.      LuMee's Fourth Claim for Relief: Alter Ego.**

Through this claim, the Plaintiff seeks a determination that Mr. Fernandez was the alter

ego of POT and, consequently, that the POT Judgment should be amended to make him co-liable

thereunder. Under New Jersey law, "an individual may be liable for corporate obligations if he

was using the corporation as his alter ego and abusing the corporate form in order to advance his

personal interests."[60] Alter ego liability requires an independent basis to hold the corporation

liable and "is employed when fraud or injustice has been perpetrated."[61]

Under Utah law, acts and obligations of a corporation may be recognized as those of a

particular person when two circumstances are shown: "(1) . . . such unity of interest and

ownership that the separate personalities of the corporation and the individual no longer exist, viz.,

the corporation is, in fact, the alter ego of one or a few individuals; and (2) the observance of the

corporate form would sanction a fraud, promote injustice, or an inequitable result would

follow."[62] Utah law employs certain "significant, although not conclusive" factors to determine

whether those two circumstances exist:

> (1) undercapitalization of a one-man corporation; (2) failure to observe corporate
> formalities; (3) nonpayment of dividends; (4) siphoning of corporate funds by the
> dominant stockholder; (5) nonfunctioning of other officers or directors; (6) absence
> of corporate records; (7) the use of the corporation as a façade for operations of
> the dominant stockholder or stockholders; and (8) the use of the corporate entity
> in promoting injustice or fraud.[63]

---

[60] *Sean Wood, L.L.C. v. Hegarty Group, Inc.*, 422 N.J. Super. 500, 517 (App. Div. 2011).

[61] *Id.*

[62] *Norman v. Murray First Thrift & Loan Co.*, 596 P.2d 1028, 1030 (Utah 1979).

[63] *Colman v. Colman*, 743 P.2d 782, 786 (Utah Ct. App. 1987) (citations omitted). New Jersey law
is substantially the same. *See D.R. Horton Inc. – New Jersey v. Dynastar Dev., L.L.C.*, No. MER-L-
1808-00, 2005 WL 1939778, at *27-28 (N.J. Super. Ct. Law Div. Aug. 10, 2005).

The Plaintiff produced a significant amount of evidence relating to Mr. Fernandez's personal use of POT credit cards.[64] Mr. Fernandez testified at trial that all expenses on the POT credit cards were business expenses, but many of the entries, especially those on Demonstrative C for dividends and personal expenses, were not, and the Court finds his testimony not credible on this point.

The evidence persuades the Court to find that Mr. Fernandez treated POT's assets as if they were his own for the following reasons. Mr. Fernandez was not sure whether POT had a board of directors.[65] POT never held a directors' meeting,[66] or a shareholders' meeting.[67] Mr. Fernandez did not consult the corporation's bylaws, articles, or other documents when making a corporate decision,[68] and did not know where those documents were.[69]  He also admitted that he gave the sole decision-making authority to himself and at all times acted for and on behalf of POT by himself.[70]

POT's bylaws require meetings, special meetings, stockholders' meetings, or written resolutions in lieu thereof.[71] The bylaws specify that there should be a board of directors and they further prescribe procedures for their meetings.[72] They also specify officers and their powers and duties.[73] They require that the board declare dividends.[74] These corporate requirements were not met.

---

[64] *See* Exs. 23, 24, and 25; *see also* Demonstrative C (summary).
[65] Trial Tr. Vol. 1, at 42:20-22.
[66] *Id.* at 44:9-11.
[67] *Id.* at 44:12-16.
[68] *Id.* at 44:6-8.
[69] *Id.* at 45:11-16.
[70] *Id.* at 42:15-17).
[71] Ex. 26, at FERN002282-83.
[72] *Id.* at FERN002283-85.
[73] *Id.* at FERN002285-87.
[74] *Id.* at FERN002288.

To be fair, Mr. Fernandez observed some corporate formalities, such as keeping records of invoices to LuMee and receipts of payments from LuMee, preparing and filing tax returns, and maintaining records of expenses and payments. But he did not recall specifically how he capitalized POT, nor whether the funds to do so were repaid or how, and he has no documentation to support any loans (although his tax returns show liability for loans) or investments.[75] Mr. Fernandez gave POT company credit cards to himself and his wife, which they used significantly, including for the payment of non-business expenses such as multiple restaurant meals a day,[76] European groceries,[77] liquor,[78] gasoline for personal vehicles,[79] family vacations, holiday ski trips, hardware near his vacation home, medical bills,[80] orthodontia,[81] and many other personal expenses. He caused POT to pay for his and his family's personal vehicles, including Mercedes-Benz car payments, repair, and maintenance for commuting, even though POT did not make deliveries or have the need to transport anyone or materials anywhere.[82]

During the same time period, Mr. Fernandez received $102,635.91 in dividends and personal spending from POT, as summarized on Demonstrative C and calculated by the Court. There was no evidence that any board of directors approved the same.

In analyzing the eight factors found in the *Coleman* case, *supra*, as to the alter ego status of Mr. Fernandez and POT, the Court finds that (1) POT was essentially a one-man corporation, but the evidence is insufficient to find it was undercapitalized; (2) there was a failure to observe

---

[75] Trial Tr. Vol. 1, 50:3-51:12.
[76] *Id.* at 116:4-9; Ex. 23, at FERN001396, FERN001386, FERN001411.
[77] Trial Tr. Vol. 1, at 182:20-25; Ex. 24 at FERN002001, FERN002007.
[78] Trial Tr. Vol. 1, at 136:8-13; Ex. 23, at FERN001103.
[79] Trial Tr. Vol. 1, at 107:9-17; Ex. 23, at FERN001436-37.
[80] Trial Tr. Vol. 2, at 9:4-11; Trial Tr. Vol. 1, at 113:20-114:3, 143:11-14; Ex. 23, at FERN001326-27, FERN001518.
[81] Trial Tr. Vol. 1, at 146:24-147-3; Ex. 23, at FERN001518.
[82] Trial Tr. Vol. 1, at 112:3-8, Ex. 23, at FERN001069, FERN001463, FERN001554.

corporate formalities; (3) although there is evidence of significant distributions of dividends, they all went to Mr. Fernandez and were not board approved; (4) there was a siphoning of corporate funds by the dominant stockholder, Mr. Fernandez, by virtue of the significant dividends he took and the significant use of funds from POT to pay his credit card expenses, which cards were issued to him by POT; (5) Mr. Fernandez was an officer of POT, and Mrs. Fernandez was the corporate secretary and provided value to POT; (6) there was not a complete absence of corporate records, but many were non-existent; (7) POT was used as a façade for operations of the dominant stockholder, Mr. Fernandez; and (8) Mr. Fernandez used up POT's assets to make it judgment proof when it came to satisfying the POT Judgment.

As a result, the Court finds and concludes that Mr. Fernandez did not observe many of the corporate formalities during 2018-19. It also concludes that Mr. Fernandez was the alter ego of POT and that the POT Judgment should be amended to include Mr. Fernandez as a defendant and co-liable party along with POT for that judgment.

In prior hearings in this proceeding, the Court heard arguments in the context of Mr. Fernandez's motions for summary judgment and LuMee's motion in limine about whether the Plaintiff can even bring an alter ego claim against Mr. Fernandez.[83]  Mr. Fernandez argued that the Court's ruling on his second motion for summary judgment should be reconsidered in this proceeding and granted, and the alter ego claim dismissed. That suggestion is denied.  No formal motion was made for the same except a reference to it in oral argument, and there is insufficient evidence and argument to support such a ruling. Moreover, Bankruptcy Rules 9023 and 9024 were not complied with for seeking to amend or modify the POT Judgment.

---

[83] *See* Dkt. Nos. 16, 32, and 47.

In its ruling on LuMee's motion in limine, the Court did find that Mr. Fernandez could provide defenses to the underlying default judgment at trial. Notwithstanding, the Court finds and concludes that Mr. Fernandez was the alter ego of POT and should be liable for the debts of POT, including the POT Judgment. Liability for that judgment would represent the cap on Mr. Fernandez's liability in this proceeding.

## I.      LuMee's Fifth Claim for Relief: Unjust Enrichment.

The Plaintiff's fifth claim against Mr. Fernandez is for unjust enrichment.  "In order to prevail on a claim for unjust enrichment, three elements must be met."[84] These elements are:

> [1] there must be a benefit conferred on one person by another[,] [2] the conferee must appreciate or have knowledge of the benefit[, and] [3] there must be "the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value."[85]

New Jersey law is consistent with Utah's.[86]

As to the first element, Mr. Fernandez admits that he received a benefit from POT through the payment of dividends, wages, and healthcare and insurance. But he disputes allegations that he benefited from the other transfers summarized in Demonstrative B, arguing that many of the payments identified in Demonstrative B were payments to third parties as legitimate business expenses and therefore not payments to Mr. Fernandez.

---

[84] *Desert Miriah, Inc. v. B & L Auto, Inc.*, 12 P.3d 580, 582 (Utah 2000) (citing *Berrett v. Stevens,* 690 P.2d 553, 557 (Utah 1984)).
[85] *Id.* (quoting *Berrett*, 690 P.2d at 557).
[86] *See EnviroFinance Group, LLC v. Envtl. Barrier Co., LLC*, 113 A.3d 775, 790 (N.J. Super. Ct. App. Div. 2015) (citing *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519 (N.J. 1994)).

As regards the second element, Mr. Fernandez admits that he had knowledge of receiving the wages and dividends from POT and therefore, again except for wages, insurance and health care, the Plaintiff has established the second prong.

But regarding the third prong, as to wages, the Plaintiff did not establish that Mr. Fernandez did not provide value or services to POT in exchange for the same. The Court finds that Mr. and Mrs. Fernandez gave value to POT in exchange for their wages. The same holds true for the insurance and health care provided for these employees as well as the other entries.

When examining this type of value in the context of an unjust enrichment claim, the Utah Supreme Court has held that "[i]t is not enough that a benefit was conferred on the defendant, and rather, the enrichment to the defendant must be unjust in that the defendant received a true windfall or 'something for nothing.'"[87] The Court finds that the enrichment requirements created by the transfers for dividends and personal spending summarized on Demonstrative C during 2018 and 2019 to be a windfall for Mr. Fernandez. Thus, the unjust enrichment claim is shown by a preponderance of evidence for the amount of $102,635.91.

**J.      LuMee's Eighth Claim for Relief: Disallowance of Claims.**

Through this claim, the Plaintiff seeks disallowance of Mr. Fernandez's claims against the estate. While POT filed a proof of claim for $866,985.75 in LuMee's main case,[88] it was disallowed by the POT Judgment. Mr. Fernandez states that he has no claims against LuMee,[89] and this claim for relief is moot as a result.

---

[87] *Emergency Physicians Integrated Care v. Salt Lake County*, 167 P.3d 1080, 1086 (Utah 2007) (citation omitted).
[88] *See* Claim No. 14 in Case No. 19-24752.
[89] Dkt. No. 60, at 36.

**K.      LuMee's Ninth Claim for Relief: Amending the POT Judgment Under a Claim of Alter Ego to Add Monster as the Alter Ego of Mr. Fernandez.**

The analysis of this claim is very similar to the Court's analysis of Plaintiff's Fourth Claim for Relief except that the Plaintiff here seeks to amend the POT Judgment to include Monster as Mr. Fernandez's alter ego.  The evidence shows that POT transferred its one remaining account to Monster after entrance of the POT Judgment without consideration. This transfer alone comes close to fitting the definition of  siphoning corporate funds by the dominant stockholder. It may not have been cash, but the sole account left with POT being transferred to Monster is closely akin. However, this transfer doesn't satisfy one of the badges of fraud.  It is relevant to the discussion of successor liability addressed below.  Monster is not the alter ego of POT.

Accordingly, the Court finds there is insufficient evidence to persuade it that Monster's receipt of that account is enough to make Monster the alter ego of POT or Mr. Fernandez. The Plaintiff argues the payments from POT to Monster for rent, which were random and in varying amounts, are evidence supporting the allegation that Monster is the alter ego of POT. But Monster was the owner of the building that had been purchased with separate funds provided by Mr. and Mrs. Fernandez. Randomness and varying amounts in the Court's opinion are not enough to make Monster the alter ego of Mr. Fernandez or POT.

In addition to being unable to satisfy the majority of the eight Utah alter ego factors for Monster, the Plaintiff did not show by a preponderance of the evidence that Monster abused corporate form in order to sanction a fraud, promote injustice, or that an inequitable result would follow. When the building was sold, the sales proceeds went to Mr. Fernandez. While the transfer of the lone remaining account from POT to Monster may make Monster a successor or expose it to successor liability, that plus the other allegations made here does not make it an alter ego. As a result, the Plaintiff's ninth claim fails.

**L.     LuMee's Tenth Claim for Relief: Adding Monster as a Co-Liable Party Under a Successor Liability Theory.**

Defendants generally agree with the claims in Plaintiff's Tenth Claim for Relief and admit that Monster should be co-liable with POT on the POT Judgment under a theory of successor liability. The Court agrees as well. Accordingly, even though the Plaintiff goes through a very extensive and convincing analysis of successor liability, since Monster agrees, the Court does not see it necessary to repeat that analysis here. Monster should be added as a defendant to the POT Judgment and is co-liable for the same.

## IV. CONCLUSION

Based on the foregoing findings, the Court concludes as follows:

1.     The Plaintiff was and still is a creditor of POT as a result of the POT Judgment.

2.     POT was insolvent during 2018 and 2019.

3.     Mr. Fernandez was the successor and mediate transferee from POT for transfers occurring during 2018 and 2019.

4.     During 2018 and 2019, Mr. Fernandez received $102,635.91. This amount was transferred from POT to or for the benefit of Mr. Fernandez during those years, and the Court determines that the transfer of such funds constitute fraudulent transfers under Utah and New Jersey laws, whether with actual intent to hinder, delay, or defraud creditors or by constructive fraud.

5.     Mr. Fernandez was unjustly enriched by the transfers of $102,635.91.

6.     The Plaintiff should be entitled to recover against Mr. Fernandez for the transfers of $102,635.91 under § 550 and § 544(b)(1) of the Bankruptcy Code, plus under the UVTA adopted in New Jersey and/or Utah, N.J. Rev. Stat. § 24:2-25(b) and 2-27, and Utah Code Ann. § 25-6-202(1)(b) and 203(2).

7.      Mr. Fernandez was the alter ego of POT and should be liable for the debts of POT, including the POT Judgment of $2,656,024.20.

8.      Monster is not the alter ego of Mr. Fernandez or POT.

9.      Monster is the successor-in-interest to POT and should be liable for the POT Judgment.

10.     The POT Judgment should be amended to include Mr. Fernandez and Monster as defendants and co-liable parties with POT.

11.     No attorney's fees are awarded.

12.     Litigation costs are awarded to the Plaintiff in an amount to submitted by affidavit and exhibit within 21 days from the date of the entry of this decision consistent with Local Rule 7054-1. Should Mr. Fernandez object to the costs, he should proceed pursuant to Local Rule 7054-1(b).

        A separate Order and Judgment will be entered in accordance with this Memorandum Decision.

_____ooo0ooo_____

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing **MEMORANDUM DECISION** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

| | |
|---|---|
| Brian M. Rothschild | brothschild@parsonsbehle.com, ecf@parsonsbehle.com, docket@parsonsbehle.com |
| Darren B. Neilson | dneilson@parsonsbehle.com |
| Jeremy C. Sink | jsink@kmclaw.com, mcarlson@kmclaw.com |

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

- None.