**This order is SIGNED.**

**Dated: April 3, 2025**





**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>LuMee LLC, a Utah limited liability company,<br><br>    Debtor. | Bankruptcy No. 19-24752<br>Chapter 11<br>Hon. William T. Thurman |
| LuMee LLC, a Utah limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>Juan Fernandez, an individual; and Monster Products LLC, a New Jersey limited liability company,<br><br>    Defendants. | Adversary Proceeding No. 21-02064<br>Hon. William T. Thurman |

**AMENDED MEMORANDUM DECISION SETTING FORTH ADDITIONAL
FINDINGS OF FACT AND CONCLUSIONS OF LAW PURSUANT TO REMAND
MANDATE FROM THE TENTH CIRCUIT BANKRUPTCY APPELLATE PANEL**

Before the Court is the post-trial remand and mandate from the Tenth Circuit Bankruptcy

Appellate Panel (the "BAP"). The BAP has mandated and instructed this Court to "further

elaborate the factual basis" for its determination that Defendant Juan Fernandez ("Mr. Fernandez"), as the alter ego of Products of Tomorrow Inc. ("POT"), is liable to Plaintiff LuMee LLC ("LuMee") for certain voidable transfers, notwithstanding certain substantive defenses Mr. Fernandez has asserted. *In re LuMee, LLC*, BAP No. 24-001, 2024 WL 4948610, at *11 (B.A.P. 10th Cir. Dec. 3, 2024). Specifically, the BAP has mandated that this Court conduct a "detailed analysis" of the initial transferee defenses asserted by Mr. Fernandez. *Id.* at *10.

In accordance with the BAP's mandate, this Court requested and has received and reviewed additional briefing submitted by the parties, as well as this proceeding's record. With that, the Court makes the following findings.

## I.      Jurisdiction

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and § 157(b). This matter is a core proceeding within the definition of 28 U.S.C. § 157(b)(2)(H), and the Court may enter a final order. Venue is appropriate under 28 U.S.C. § 1409. Based on the mandate from BAP, this Court has authority to make the below findings of fact and conclusions of law.

## II.     Preliminary Observations

This Court will do its best to comply with the BAP's request in its remand. If this Court fully understands the BAP's remand order, this Court will analyze transfers between LuMee and POT only. The Court will first address some additional issues it has observed since this proceeding's remand and will then address the specific findings the BAP mandated.

First, this Court has reviewed the docket of Case Number 20-02145, *LuMee LLC v. Products of Tomorrow Inc.*, (the "POT Lawsuit") and takes judicial notice that Mr. Fernandez has not sought to Amend or filed a Motion to Set Aside the Default Judgment entered in favor of

LuMee (the "POT Default Judgment") (Dkt. 17), under Federal Rules of Civil Procedure 59 and 60.[1] LuMee raised the issue of Mr. Fernandez's failure to file a Rule 59 or 60 motion at trial. (Transcript of Trial Held on May 19, 2023 (hereinafter "Trial Tr. Vol. 3"), Pgs. 74:21–75:17; 81:6–8). As Mr. Fernandez has not brought such a motion or appealed this Court's judgment, the Court believes the POT Default Judgment remains final. This Court believes it lacks the ability to modify the POT Default Judgment. "[O]nce a judicial decision achieves finality, it becomes the last word of the judicial department." *Miller v. French*, 530 U.S. 327, 344 (2000) (quotations omitted). However, this Court reads the BAP remand as allowing this Court to amend the POT Default Judgment's applicability to Mr. Fernandez if he can or has demonstrated in this case, Case Number 21-02064, that his defenses should prevail.

Second, to the extent that this Court's decision might implicate a solvency determination of LuMee implied by the POT Default Judgment, this Court will not disturb that judgment. Notwithstanding this Court's election not to modify the POT Default Judgment, the parties have raised the possibility of modifying the POT Default Judgment's applicability to Mr. Fernandez on account of his initial transferee defenses. The BAP's mandate also contemplates this procedure. This Court allowed the parties to present substantive evidence of Mr. Fernandez's defenses in its Order on LuMee's Motion in Limine. (Dkt. 54). And at trial, Mr. Fernandez's counsel raised the issue of whether LuMee's insolvency timing implicates Mr. Fernandez's good faith receipt of certain transfers from LuMee. (Trial Tr. Vol. 3, Pgs. 109:8–116:18). Mr. Fernandez additionally raised the issue of his providing reasonably equivalent value for these transfers, under Utah Code § 25-6-203(2) and 11 U.S.C. § 548(a)(1)(b), at trial. (*Id.*, Pg. 160:9–17). If after weighing the

---

[1] Federal Rules of Civil Procedure 59 and 60 are made applicable to this proceeding through Federal Rules of Bankruptcy Procedure 9023 and 9024.

evidence pertaining to Mr. Fernandez's good faith argument, this Court determines that Mr. Fernandez had or did not have actual or constructive knowledge of LuMee's imminent insolvency, this Court will modify the POT Default Judgment's applicability to Mr. Fernandez as appropriate in this proceeding.

Third, this Court has considered LuMee's argument that Mr. Fernandez has failed to raise his initial transferee defenses in his Answer to LuMee's Amended Complaint. (Dkt. 31). In his Answer, Mr. Fernandez plead that should discovery "reveal additional defenses required by the Rules of Civil Procedure to be plead affirmatively," he "incorporates each such defense by reference and reserves the right to amend this answer to specifically assert such defenses." (*Id.* at Pg. 16). However, Mr. Fernandez did not later amend his Answer to include the now-asserted initial transferee defenses.

"The general rule [in the Tenth Circuit] is that a party waives its right to raise an affirmative defense at trial when the party fails to raise the defense in its pleadings." *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1076 (10th Cir. 2009). However, "court[s] must focus on the actual purpose of Rule 8 in deciding whether Defendants waived their . . . defense[s]." *Unicity Int'l, Inc. v. Moyles*, No. 2:16-cv-00766, 2021 WL 1381201, at *12 (D. Utah April 9, 2021). "[C]ourt[s] should generally permit a party to raise an affirmative defense so long as there is adequate notice and an absence of prejudice to the opposing party." *Bedrock Quartz Surfaces, LLC v. Rock Tops Holdings, LLC*, No. 2:23-cv-00310, 2023 WL 8481417, at *3 n.42 (D. Utah Dec. 7, 2023). Here, the parties have both received adequate notice of Mr. Fernandez's initial transferee defense, as both parties submitted briefs on LuMee's Motion in Limine. (Dkt. Nos. 47–49). This Court also conducted a hearing on LuMee's Motion in Limine, where both parties appeared. (Dkt. 50). When courts provide "a reasonable opportunity to respond to the . . . [new] evidence," they

minimize prejudice to the opposing party. *Creative Consumer Concepts, Inc.*, 563 F.3d at 1077. The Court concludes that LuMee suffered little prejudice when the Court allowed Mr. Fernandez to present substantive evidence of his defenses. "[D]efaults are [generally] disfavored." *Heber v. U.S.*, 145 F.R.D. 576, 577 (D. Utah 1992). And "[e]very effort should be made to try cases on their merits." *Greenwood Expls., Ltd. v. Merit Gas & Oil Corp.*, 837 F.2d 423, 426 (10th Cir. 1998). Accordingly, and as requested by the BAP, the Court will consider Mr. Fernandez's initial transferee defenses.

Fourth, this Court determined in its Memorandum Decision that the value of certain personal spending transfers from POT to Mr. Fernandez during 2018 and 2019 was $102,635.91 (Dkt. 68, Pg. 16). As this Court reads the remand order, the BAP did not disturb this determination on appeal. The value transferred from POT to Mr. Fernandez is not subject to Mr. Fernandez's initial transferee defenses, as these personal transfers (ex: certain travel expenses) do not pertain to LuMee. (*See e.g.*, Trial Tr. Vol. 3, Pgs. 64:17–66:25). This amount of money is not subject to Mr. Fernandez's initial transferee defenses, so this Court will not disturb its finding and conclusion on this issue.

For the sake of convenience, this Court takes judicial notice that all complained-of transfers between LuMee and POT from the POT Default Judgment (the "Transfers") have been outlined in LuMee's Demonstrative Trial Exhibit E. (Dkt. 59-4). The Court takes further notice that LuMee's Demonstrative Trial Exhibit E specifically contains a list of LuMee's member distributions (the "Distributions") which occurred from 2016 to 2017. The parties appear to have impliedly stipulated that the Transfers and Distributions as set forth in LuMee's Demonstrative Trial Exhibit E are authentic representations of the actual transfers and distributions, as both parties have relied on Trial Exhibit E when summarizing the Transfers and Distributions. (*See* Trial Tr. Vol. 1, Pgs.

5:23–6:4; 9:11–18. *See also* Trial Tr. Vol. 3, Pgs. 91:23–94:6; 148:24–149:2). Additionally, as the

BAP affirmed this Court's determination that Mr. Fernandez is the alter ego of POT, this Court

will use the terms "Mr. Fernandez" and "POT" interchangeably.

Finally, the Court adopts its prior findings, conclusions and judgment of December 22,

2023 (Dkt. Nos. 68 and 69) without modification except as herein identified.

## III.    Analysis

The BAP determined that this Court clearly erred when it failed to analyze Mr. Fernandez's

initial transferee defenses. *In re LuMee, LLC*, 2024 WL at *10. The BAP has mandated that this

Court reweigh the evidence presented by the parties and further elaborate its findings of fact and

conclusions of law regarding Mr. Fernandez's substantive defenses to the enforcement of the POT

Judgment. *Id.* at *11. With that direction, this Court will now consider those defenses.

In his Post Appeal Trial Brief (Dkt. 86), Mr. Fernandez made a number of arguments and

proposed findings. But only four arguments appear to discuss his initial transferee defenses. The

Court will focus only on those related to the remand instructions: 1.) POT gave reasonably

equivalent value for the LuMee Transfers;[2] 2.) the Transfers from LuMee to POT were not based

on an actual fraudulent intent;[3] 3.) none of the Transfers from LuMee to POT were for an

antecedent debt, per Utah Code § 25-6-203(2);[4] and 4.) POT accepted the transfers without

knowledge of LuMee's insolvency and therefore in good faith.[5] Mr. Fernandez raised these

---

[2] Dkt. 86, Pg. 13 ("LuMee received reasonably equivalent value in exchange for these payments.").
[3] Dkt. 86, Pg. 10 ("The [t]ransfers from LuMee to POT . . . [w]ere [n]ot [m]ade to [h]inder [d]elay or [d]efraud [c]reditors.").
[4] Dkt. 86, Pg. 14 ("[N]one of the payments [from LuMee to POT] were made for antecedent debt.").
[5] Dkt. 86, Pg. 14 ("[A]s to whether the debtor was insolvent, and Mr. Fernandez knew or had reasonable cause to believe LuMee was insolvent, the evidence shows he had no such reasonable belief.").

arguments at trial as well. Accordingly, the Court determines that these arguments have been adequately preserved.

### A. Products of Tomorrow provided reasonably equivalent value for the Transfers.

The Court will first analyze Mr. Fernandez's defense of whether POT provided LuMee with reasonably equivalent value when POT sold LuMee its products in exchange for the Transfer money. Utah Code §25-6-203(1) requires a finding of reasonably equivalent value, but 203(2) does not. The Court will address the defense as under §25-6-203(1). The reasonably equivalent value determination is an objective one. *In re Indep. Clearing House Co.*, 77 B.R. 843, 859 (D. Utah 1987) ("'Value' must be determined by an objective standard.") (citing *In re Checkmate Stereo & Elecs., Ltd.*, 9 B.R. 585, 591 (Bankr. E.D.N.Y. 1981)). After reviewing the evidence in the record, this Court is persuaded that POT provided reasonably equivalent value to LuMee in exchange for the Transfers. Several sources of evidence inform this Court's determination.

First, Mr. Fernandez's Trial Exhibit 31, which contains certain purchase orders from LuMee to POT for cell phone covers, demonstrates that LuMee intended to conduct economic transactions with POT. (*See* Trial Tr. Vol. 2, Pg. 82:1–20). Mr. Fernandez testified that POT received these purchase orders. (*Id.*). The Court interprets this Exhibit 31 as evidence that LuMee intended to strike a deal with POT. Both businesses saw value in a potential economic relationship, and they each decided to pursue a deal.

Second, Mr. Fernandez's Trial Exhibit 32, which contains invoices which POT submitted to LuMee for payment, demonstrates that POT manufactured the requested products. Mr. Fernandez verified at trial that Exhibit 32 contains all of the invoices from Products of Tomorrow

to LuMee. (*Id.*, Pgs. 82:21–83:9). The Court interprets this Exhibit 32 as evidence that POT did indeed manufacture LuMee's requested phone cases.

Third and most importantly, Mr. Fernandez's Trial Exhibit 34, which compiles a record of payments made from LuMee to POT in exchange for the products, demonstrates that LuMee paid for the products it received. (*Id.*, Pg. 134:20–24). The receipts identified in Exhibit 34 match the Transfers set out in Demonstrative E. Further, Mr. Fernandez, at trial, verified that POT received payments from LuMee as set forth in Exhibit 34. (*Id.*, Pgs. 11:19–13:18). The Court interprets this Exhibit 34 as evidence that the Products were shipped to and received by LuMee. (*See id.*, Pg. 12:1–3) (Q: "Is it fair to say that it [Exhibit 34] reflects the payments that LuMee made to POT?" A: "Yes, sir. I believe so.").

Testimony given at trial further supports the conclusion that LuMee gave reasonably equivalent value for the products provided by POT. Mr. Robert Pedersen, LuMee's CEO from the start of 2016 until the late spring of 2018, testified that LuMee was able to routinely sell POT's cell phone cases at a profit. (Trial Tr. Vol. 3, Pg. 24:15–20; Pg. 34:8–10).

Mr. Pedersen also testified that he, and by extension LuMee, was generally satisfied with POT's products. (*Id.*, Pgs. 14:21–15:8). Mr. Pedersen explained that POT's Products were productive and profitable for LuMee. (*Id.*, Pg. 16:19–23.).

Finally, Mr. Pedersen testified that LuMee's significant write-offs of POT's product resulted not from numerous defective POT cases but rather from new iPhone releases, which shifted market sentiment away from obsolete phone models. (*Id.*, Pg. 33:14–24). These write-offs do not appear to stem in large part from a deficiency in LuMee's products.

In light of this evidence, the Court determines and finds that LuMee and POT were sophisticated market participants who agreed on a negotiated price for the goods to be supplied. The Court will not second-guess the precise negotiated value of the price of goods sold. The Court has sufficient evidence to support a determination that the Transfers were made for reasonably equivalent value and so finds.

### B. LuMee did not transfer its payments to Products of Tomorrow with an actual fraudulent intent.

Mr. Fernandez next raises the defense that LuMee did not facilitate the Transfers with an actual intent to hinder, delay, or defraud its creditors. *See Indep. Clearing House Co.*, 77 B.R. 843, 859 (D. Utah 1987) ("A transfer made for reasonably equivalent value can still be fraudulent and hence avoidable if it was made with actual intent to hinder, delay, or defraud persons to whom the debtor was or later became indebted.") (quotations omitted). Here, in addition to referring to 11 U.S.C. § 548(a)(1)(A), it appears that Mr. Fernandez is referring to Utah Code §25-6-202(1)(a) as that test does not appear in 203(2). Courts look to certain badges of fraud when evaluating whether a debtor had an actual intent to hinder, delay, or defraud its creditors through the transfer.[6] The Utah Legislature has enumerated these badges of fraud in the Utah Uniform Voidable Transactions Act at Utah Code § 25-6-202(2).

---

[6] *See In re Kelsey*, 270 B.R. 776, 782 (B.A.P. 10th Cir. 2001) ("Intent to hinder, delay, or defraud creditors is rarely admitted by a debtor. Therefore, a court may consider circumstantial evidence establishing badges of fraud. Relevant factors include whether the transfer was to an insider; whether the debtor retained possession or control of the property after the transfer; concealment of the transfer; pending or threatened litigation against the debtor at the time of transfer; a transfer of substantially all of the debtor's assets; absconding by the debtor; removal or concealment of assets; reasonably equivalent value in exchange for the transfer; the debtor's insolvency at the time of the transfer; the proximity in time of the transfer to the incurrence of a substantial debt; and a transfer of substantial business assets to a lienor followed by a subsequent transfer of such assets to an insider of the debtor. Transfers to family members are subjected to particularly close scrutiny. The relationship of the parties in conjunction with other circumstances often provides compelling evidence of fraud.") (citations omitted).

Though the transfer of LuMee's payment for the POT Products was to an insider, the lack of other badges of fraud convinces this Court that LuMee did not intend to hinder, delay, or defraud POT.

LuMee did not conceal its Transfers to POT, LuMee did not retain control of the money it transferred to POT, the Transfers were not comprised of substantially all of LuMee's assets, and LuMee did not abscond after paying POT. Rather, the Transfers were made in the regular course of LuMee's business operations. LuMee did not conceal its business relationship with POT or its business purpose of selling phone cases. Instead, LuMee took steps to publicize POT's products, through its marketing agreement with Ms. Kim Kardashian. (Trial Tr. Vol. 2, Pg. 90:3–16). Though LuMee was undergoing significant business stress during 2017 and 2018, the presence of such business stress does not suggest an actual intent to defraud its creditors.

The Court has reviewed the record and pays special attention to Mr. Fernandez's counsel's closing statement, where counsel walked through each statutory badge of fraud under the Utah Uniform Voidable Transactions Act. (Trial Tr. Vol. 3, Pgs. 120–125). Though counsel for Mr. Fernandez made these remarks regarding transfers between POT and Mr. Fernandez, the Court draws a helpful analogy with the Transfers made from LuMee to POT. The Transfers between LuMee and POT have a paper trail, LuMee never absconded with POT's products, and LuMee did not conceal its payments. Further, as explained above in Section II(A), *supra*, LuMee's Transfers to POT were supported by reasonably equivalent value.

Based on the evidence in the record, this Court finds and concludes that LuMee did not make the Transfers to POT with an actual fraudulent intent and that there was no avoidable transfer under 11 U.S.C. § 548(a)(1)(A) or Utah Code § 25-6-202(1).

### C.  The Transfers between LuMee and POT were for antecedent debts.

Mr. Fernandez argues that LuMee's Transfers were not for "antecedent debts," such that the Utah Uniform Voidable Transactions Act (Utah Code § 25-6-101 *et seq*.) does not impose liability. The BAP commented that "at trial, Fernandez presented the [argument that] . . . the POT Transfers were not avoidable under Utah Code Ann. § 25-6-203(2) because the [T]ransfers were made to an insider but not for an antecedent debt . . ." *In re LuMee*, BAP No. 24-001, 2024 WL 4948610, at *3 (B.A.P. 10th Cir. Dec. 3, 2024).

Under Utah Code § 25-6-203(2), "a transfer made by a debtor [LuMee] is voidable as to a creditor [POT] whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at the time, and the insider had reasonable cause to believe that the debtor was insolvent." The existence of an "antecedent debt" is a necessary condition for liability under this statute.

Counsel for Mr. Fernandez argued that the Transfers between LuMee and POT "were made as a contemporaneous exchange for new value (new cell phone covers)." (Dkt. 60, Pg. 29. Conversely, Counsel for LuMee contended that "if you pay an invoice the day after you got it [the invoice], you made a payment on an antecedent debt . . . [a] payment on account of an invoice is not a . . . contemporaneous exchange of value." (Trial Vol. 3, Pg. 177:17–22). Because LuMee's Transfers were payments on previously-submitted POT invoices, LuMee argues that the Transfers were paid on account of antecedent debts.

"An antecedent debt is a debt incurred at some time preceding a transfer in payment on the debt." *In re White*, BAP No. 22-008, 2024 WL 698232, at *7 (B.A.P. 10th Cir. Feb. 21, 2024). And "[a] debt is 'incurred' on 'the date upon which the debtor first becomes legally bound to pay.'" *In*

11

*re Indian Capitol Distrib., Inc.*, 484 B.R. 394, 401 (Bankr. D.N.M. 2012) (quoting *In re Bridge Info. Sys.*, 474 F.3d 1063, 1067 (8th Cir. 2007)).

The Court turns again to Mr. Fernandez's Trial Exhibits 31, 32, and 34. The Court views these exhibits as evidence that LuMee requested POT to manufacture individual products based on individual requests. POT in turn shipped the individual products and submitted individual invoices for payment. Of particular importance is Trial Exhibit 34. This exhibit contains wire transfer receipts from POT. For example, document FERN00958, a document within this exhibit, is a receipt for a wire transfer of $81,481.18, which occurred on October 26, 2017, from LuMee. This receipt has a unique reference number, which indicates the existence of a corresponding order. Demonstrative Exhibit E reflects this same transfer. Demonstrative Exhibit E's transfers are all reflected in Exhibit 34. The presence of these individual payment receipts from LuMee to POT, as well as the timeline of payment identified in Demonstrative Exhibit E, convinces this Court that the debts between LuMee and POT are individual antecedent debts.

Mr. Fernandez's argument that the debts LuMee owed to POT were not antecedent debts is therefore unavailing, and the court so finds that the Transfers were for antecedent debts.

### D.  POT acted in good faith up until the time that Mr. Fernandez knew or should have known LuMee was in imminent danger of becoming insolvent.

Mr. Fernandez next contends that POT received the Transfers from LuMee in good faith or as Utah Code § 25-6-203(2) calls it "where the insider [POT] had reasonable cause to believe that the Debtor [LuMee] was insolvent." Mr. Fernandez's counsel raised this issue in his closing argument. (Trial Tr. Vol. 3, Pgs. 109–115). The evidence in the record convinces this Court that POT received the Transfers from LuMee in good faith up until the time that Mr. Fernandez realized or had good reason to believe that LuMee was in imminent danger of becoming insolvent or was

in fact insolvent. After that time, the evidence demonstrates that POT had actual or at least constructive knowledge of LuMee's impending and subsequent insolvency. After that time, Mr. Fernandez did not receive the Transfers in good faith.

For an explanation of what is good faith, in a decision interpreting § 548, our circuit has said "[G]ood faith under § 548(c) should be measured objectively." *In re M&L Bus. Mach. Co., Inc.*, 84 F.3d 1330, 1338 (10th Cir. 1996). A defendant has the burden to prove this defense. In *In re M&L Business Machine Company, Inc.*, the Tenth Circuit cited with approval the Eighth Circuit's explanation that "a transferee does not act in good faith when he has sufficient knowledge to place him on inquiry notice of the debtor's possible insolvency." *Id.* at 1336 (quoting *In re Sherman*, 67 F.3d 1348, 1355 (8th Cir. 1995)).

The Tenth Circuit further noted that "the majority of bankruptcy courts construing 'good faith,' as it is used in § 548(c), have followed the Eighth and Ninth Circuits, holding that a transferee who reasonably should have known of a debtor's insolvency or fraudulent intent. . . is not entitled to the § 548(c) good faith defense." *In re M&L Bus. Mach. Co., Inc.*, 84 F.3d at 1336. *See also Banner v. Kassow*, 104 F.3d 352, at *3 (2d Cir. 1996) (unpublished); *In re Anchorage Marina, Inc.*, 93 B.R. 686, 693 (Bankr. D.N.D. 1988); *In re Model Imperial, Inc.*, 250 B.R. 776, 798 (Bankr. S.D. Fla. 2000) ("[A] transferee may not put on "blinders" prior to entering into transactions with the debtor and claim the benefit of § 548(c).") (quoting *In re Cannon,* 230 B.R. 546, 592 (Bankr. W.D. Tenn. 1999) (*rev'd on other grounds,* 277 F.3d 838 (6th Cir. 2002))). The Court adopts this analysis here.

In its Memorandum Decision of December 22, 2023, this Court determined that LuMee was solvent in 2017 but became insolvent during 2018. (Dkt. 68, Pg. 10–12) ("LuMee was still viable and valuable during 2017 . . . [but] LuMee was barely hanging on as a viable economic

entity in 2018 . . . [and] LuMee was not a viable company in . . . 2019."). The Transfers have been impliedly stipulated to have occurred from May 5, 2017 through November 15, 2018. And the Distributions have been impliedly stipulated to have occurred between April 8, 2016 and April 10, 2017. The Court determines that a recipient of funds from a solvent entity which was not in the penumbral zone of insolvency takes those funds in good faith. As such, all Transfers and Distributions to POT prior to LuMee's entrance into the "zone of insolvency," wherein Mr. Fernandez should have known LuMee would imminently become insolvent, were received in good faith.

The operative question regarding Mr. Fernandez's good faith, therefore, is when Mr. Fernandez should have known of LuMee's imminent insolvency. Because POT had been a member of LuMee since 2015, Mr. Fernandez was an insider who had access to LuMee's financial information during the entire time of the Transfers and Distributions. (Trial Tr. Vol. 1, Pg. 202:21–25). And indeed, Mr. Fernandez testified that he or another POT representative reviewed LuMee's financial records. (Trial Tr. Vol. 2, Pg. 95:11–18) (Q: "Did you receive and review financial statements from LuMee after becoming a member?" A: "When they were sent to me, yes. I would look at them[,] and I would send them to my accountant to look at them and review them."). Under this Court's alter ego judgment, which the BAP affirmed, Mr. Fernandez knew what POT knew. *See In re LuMee, LLC*, 2024 WL at \*10 ("[W]e conclude the Bankruptcy Court did not abuse its discretion by finding Fernandez was the alter ego of POT."). Mr. Fernandez therefore had either actual or constructive knowledge of LuMee's declining sales and unstable financial condition as it occurred.

LuMee had a profitable 2015 and 2016. (Trial Tr. Vol. 3, Pg. 27:5–10). LuMee's financial troubles seem to have begun in 2017, when late in the first quarter LuMee started "stretch[ing] its

payables with vendors." (Trial Tr. Vol. 2, Pg. 44:14–17). LuMee representatives noted that in 2017, LuMee distributed $2,100,000 to its members. (Trial Ex. 11, at FERN00079; Trial Tr. Vol. 2, Pg. 45:1–7; Trial Tr. Vol. 3, Pg. 31:4–8). Later, it appears that LuMee reported a $245,000 loss at the end of that same year. (Trial Tr. Vol. 2, Pg. 98:15–18). Mr. Matthew McKinley, the current trustee of the LuMee Liquidating Trust, testified that LuMee's financial strain in 2017 seemed to have set it down the road to insolvency. (*Id.*, Pg. 45:14–17) (Q: "Did it [LuMee] ever recover from what happened in 2017?" A: "No, it [LuMee] ultimately culminated in the Chapter 11 filing in 2019.").

The record further indicates that Mr. Fernandez was aware of another significant threat to LuMee's solvency in the second half of 2017. (Trial Tr. Vol. 3, Pgs. 17:13–18:19). Mr. Robert Pedersen, LuMee's former CEO, testified that an entity member of LuMee named KimsAPrincess Inc. (owned by Ms. Kim Kardashian, a brand partner of LuMee) had become embroiled in a patent infringement lawsuit. (*Id.*, Pg. 17:14–19). Mr. Pedersen claimed that under the terms of LuMee's member agreement, LuMee had to indemnify Ms. Kardashian's company. (*Id.*, Pg. 17:15). Mr. Pedersen continued that the plaintiff in this infringement action had sent letters to several of LuMee's major retailing partners, which had "really hurt" LuMee's distributions. (*Id.*, Pgs. 18:16–19:3). Mr. Pedersen continued that in 2018, LuMee's sales were "much, much lower," such that it was in "fail-to-survival mode." (*Id.*, Pg. 19:3–6). Though LuMee and Ms. Kardashian prevailed in the litigation (*Id.*, Pg. 22:3–5), Mr. Pedersen further testified that this litigation put LuMee in a "precarious" position financially, as LuMee had to mend its relationships with third-party retailers and deal with other competitors. (*Id.*, Pg. 19:7–17).

LuMee then appears to have entered a factoring agreement in 2018. (Trial Tr. Vol. 2, Pg. 44:21–22). And on September 17, 2018, LuMee sent a document to POT and others, which said "our current liabilities are greater than our current assets." (Trial Exhibit 13, at FERN0153; Trial

15

Tr. Vol. 3, Pgs. 38:24–39:9). In that same document, LuMee acknowledged that it had "a $960k balance on our line of credit to our manufacturer, Products of Tomorrow." (Trial Exhibit 13, at FERN0153). The letter also stated that "Sales revenue was down 54% YOY [year over year] in the first six months of the year from the sum of a 76% decrease in retail sales." (*Id.*). Mr. Fernandez acknowledged receiving this letter. (Trial Tr. Vol. 2, Pg. 104:17–25). And in that same letter, LuMee informed its members that it was winding down its credit facility with Wells Fargo, making POT LuMee's sole source of credit. (*Id.*, Pg. 105:12–17; FERN0153).[7] LuMee also admitted that it was unable to pay POT's invoices at times. (Trial Tr. Vol. 3, Pg. 37:8–18).

Further, on September 17, 2018, LuMee's outside accountants, Wiss & Company LLP, sent to the members of LuMee (including POT) an Independent Accountants' Compilation Report. (Trial Exhibit 11, FERN0083). This accounting report provided LuMee's financial statements as of June 30, 2018. LuMee's Statement of Operations (its income statement), as of June 30, 2018, listed a $986,449 net loss. (*Id.*, at FERN0085). Mr. Fernandez acknowledged that during the reporting time listed in this document, he was aware that LuMee was undergoing a decrease in sales. (Trial Tr. Vol. 1, Pg. 205:4–7). And throughout this time, LuMee's debt to POT was growing. Mr. Fernandez testified that he was trying to work out an alternative payment plan to ensure that LuMee would maintain some momentum towards repayment. (*Id.*, Pg. 208:1–19).

The evidence in the record demonstrates that Mr. Fernandez knew that LuMee was insolvent on September 17, 2018. Although there are strong indicia that Mr. Fernandez knew about LuMee's actual or imminent insolvency around the start of 2018 and perhaps even into the final months of 2017 (notably the ballooning of debt owed to POT, the mounting litigation costs in the

---

[7] Counsel for Mr. Fernandez contends that LuMee's winding down its credit facility with Wells Fargo may be better characterized as LuMee retiring its debt with Wells Fargo. (Dkt. 86, Pg. 15). Under either characterization, however, the significant point remains the same: Wells Fargo was no longer extending credit to LuMee.

patent infringement lawsuits, the $245,000 loss posted at the end of 2017, and the negative income reported as of June 30, 2018), these sources of proof do not amount to a particular date on which to charge Mr. Fernandez with constructive knowledge. This Court is only concerned with making sense of the evidence before it in the record and resists the possibility of finding Mr. Fernandez knew of the insolvency of LuMee any earlier than September 17, 2018.[8]

LuMee's admission on September 17, 2018 that its liabilities were greater than its assets and its sending the notice of such to POT convinces the Court that Mr. Fernandez knew that LuMee was insolvent on that day. *See In re Tri-Valley Distrib., Inc.*, 452 B.R. 837, 847 (Bankr. D. Utah 2011) (applying the balance sheet insolvency test). The evidence fails to identify a precise earlier date on which Mr. Fernandez might have reasonably suspected LuMee was insolvent. This Court therefore determines that the most precise date allowed by the evidence, on which to charge Mr. Fernandez with knowledge of LuMee's insolvency, and therefore a lack of good faith, was September 17, 2018.

Counsel for Mr. Fernandez insists that Mr. Fernandez did not know or believe LuMee was insolvent on September 17, 2018. At trial, Mr. Fernandez testified that he did not think that LuMee was insolvent, despite having received LuMee's representation that its liabilities were greater than its assets. (Trial. Tr. Vol. 1, Pg. 205:4–20). In his post-appeal brief, Mr. Fernandez's counsel noted that LuMee's letter to its members from September 17, 2018 stated, "LuMee is now operating at or near breakeven and forecasted positive EBITDA by the end of 2018." (Dkt. 86, Pg. 15, quoting FERN0153). However, the analysis for good faith and inquiry knowledge is an objective one. *See In re M&L Bus. Mach. Co., Inc.*, 84 F.3d 1330, 1338 (10th Cir. 1996); *In re C.W. Mining Co.*, No.

---

[8] This determination is in line with this Court's previous Memorandum Decision. (*See* Dkt. 68, Pg. 19) ("The Court finds that Mr. Fernandez knew or should have known about the precarious financial condition of LuMee . . . at least beginning in 2018 through 2019.").

08-2338, 2009 WL 4809632, at *10 (Bankr. D. Utah Dec. 9, 2009): ("[L]ooking objectively at the circumstances at and after the time of the transfers in question, Hiawatha [the target of the transfers] at least had inquiry notice of the potential avoidability of the transfers."). This Court is concerned about whether a reasonable person would have believed that LuMee was imminently insolvent upon receiving this communication. The Court interprets LuMee's representation that it was "operating at or near breakeven" as a representation that it was still underwater at that moment. Mr. Fernandez's argument is unpersuasive. His comments to the contrary are not credible in light of all of the evidence.

The parties agreed that Trial Demonstrative Exhibit E constitutes the universe of Transfers and Distributions LuMee made to POT. The Court finds that those Transfers and Distributions which occurred prior to September 17, 2018 are non-avoidable. These transfers were received by POT in good faith, and POT provided reasonably equivalent value for them. Conversely, the Transfers or Distributions that were received by POT after September 17, 2018 were not received in good faith, as Mr. Fernandez knew or reasonably should have known LuMee was insolvent. These transfers are therefore avoidable under 11 U.S.C. § 548(a)(1)(b), Utah Code § 26-6-203(2), and New Jersey Revised Statutes § 25-2-27(b) (the "Avoided Transfers").

The Avoided Transfers are comprised of twelve (12) transfers, for a total value of $72,565.82. The complained-of Distributions occurred between April 8, 2016 and April 10, 2017, so no Distributions are avoidable.

## IV.    MODIFICATION OF CONCLUSIONS

Having made the requisite findings of fact, this Court hereby AMENDS its conclusions

from its Memorandum Decision issued on December 22, 2023 (Dkt. 68) as follows:

1.    LuMee was and still is a creditor of POT as a result of the POT Default Judgment.

2.    Mr. Fernandez had knowledge or reasonably should have known of LuMee's

insolvency on September 17, 2018.

3.    POT was insolvent during 2018 and 2019 and at least beginning September 17,

2018.

4.    The amount of personal spending from POT to Mr. Fernandez during 2018 and

2019 is $102,635.91 (Dkt. 68, Pg. 16). This amount of money is not subject to Mr. Fernandez's

initial transferee defenses.

5.    Mr. Fernandez was the successor and mediate transferee from POT for transfers

occurring during 2018 and 2019. POT and Mr. Fernandez were insiders of LuMee.

6.    During 2018 and 2019, Mr. Fernandez received $102,635.91. This amount was

transferred from POT to or for the benefit of Mr. Fernandez during those years, and the Court

determines that the transfer of such funds constitute fraudulent transfers under Utah and New

Jersey laws, by constructive fraud.

7.    Mr. Fernandez was unjustly enriched by the transfers of $102,635.91.

8.    The Plaintiff should be entitled to recover against Mr. Fernandez for the transfers

of $102,635.91 under § 550 and § 544(b)(1) of the Bankruptcy Code, plus under the UVTA

adopted in New Jersey and/or Utah, N.J. Rev. Stat. § 25:2-27(b), and Utah Code Ann. § 25-6-203(2).

9.      Mr. Fernandez was and is the alter ego of POT and should be liable for the debts of POT, including the POT Default Judgment, but only to the amount of $72,565.82.

10.     Monster is not the alter ego of Mr. Fernandez or POT.

11.     Monster is the successor-in-interest to POT and should be liable for the POT Default Judgement, but only to the amount of $72,565.82.

12.     The POT Default Judgment, should be further amended to include Mr. Fernandez and Monster as defendants and co-liable parties with POT, but only to the amount of $72,565.82.

13.     No additional post-appeal attorney's fees are awarded.

14.     No additional post-appeal litigation costs are awarded.

A separate Order and Judgment will be entered in accordance with this Amended Memorandum Decision.

_____ooo0ooo_____

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing AMENDED MEMORANDUM DECISION shall be served to the parties and in the manner designated below.

**By Electronic Service**: I certify that the parties of record in this case as identified below, are registered CM/ECF users:

Brian M. Rothschild       brothschild@parsonsbehle.com, ecf@parsonsbehle.com, docket@parsonsbehle.com

Darren B. Neilson       dneilson@parsonsbehle.com

Jeremy C. Sink       jsink@kmclaw.com, mcarlson@kmclaw.com

**By U.S. Mail**: In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

• None.